UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DAVID A. KIRKLAND,                    )
                                      )
            Plaintiff,                )
                                      )
v.                                    )        No. 3:22-CV-60-DCP
                                      )
KILOLO KIJAKAZI,[1]                   )
Acting Commissioner of Social Security, )
                                      )
            Defendant.                )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 15].  Now before the Court are

Plaintiff's Motion for Summary Judgment [Doc. 16] and Defendant's Motion for Summary

Judgment [Doc. 19].  David Kirkland ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On May 21, 2019, Plaintiff filed an application for disability insurance benefits pursuant

to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that

began on September 20, 2017 [Tr. 15, 163–64].  After his application was denied initially [*Id.* at

56–74] and upon reconsideration [*Id.* at 75–99], Plaintiff requested a hearing before an ALJ [*Id.* at

---

[1]    Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

111–12]. A telephonic hearing was held before the ALJ on December 10, 2020 [Tr. 31–55]. On January 11, 2021, the ALJ found that Plaintiff was not disabled [Tr. 15–26]. The Appeals Council denied Plaintiff's request for review on December 16, 2021 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on February 16, 2022, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since September 20, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: obesity, status post joint fusion with residuals and arthritis, and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can only stand and/or walk for 2 hours in an 8-hour workday. He can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He should avoid all exposure to unprotected heights, moving mechanical parts, and other workplace hazards. He must use a handheld assistive device to be held in the right upper dominant

2

extremity at all times while walking over uneven terrain and for distances over 100 feet, but can carry item(s) in the left non-dominant upper extremity. He can perform simple tasks with customary breaks and few changes in a routine work setting. He can have occasional interaction with the general public and frequent interaction with co-workers and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 29, 1992 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 20, 2017, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 17–26].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the

procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

3

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed

4

waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.   DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.  ANALYSIS

Plaintiff raises three arguments on appeal as to why the ALJ's decision should be remanded. First, he argues the ALJ failed to adequately address Listing 1.03 at step three in the sequential analysis "despite evidence that Plaintiff meets this Listing" [Doc. 17 pp. 8–12]. Second, he contends the ALJ erred in finding the opinion of Roger Barnes, D.N.P. ("D.N.P. Barnes") unpersuasive [*Id.* at 12–17]. Third, Plaintiff argues the ALJ failed to account for his moderate restrictions in maintaining concentration, persistence, and pace when formulating his RFC [*Id.* at 17–19]. The Commissioner counters that Plaintiff's arguments are without merit because the ALJ's findings are all supported by substantial evidence, including: (1) the ALJ's step three findings that Plaintiff does not meet any of the listed impairments [Doc. 20 pp. 7– 14]; (2) the

6

ALJ's persuasiveness findings for D.N.P. Barnes's opinion [*Id.* at 14–16]; and (3) the ALJ's RFC determination [*Id.* at 16–20]. Having reviewed this matter and considered the parties' arguments, the Court finds Plaintiff has not presented a valid basis for disturbing the Commissioner's final decision, which applied the correct legal standards and is otherwise supported by substantial evidence.

## A. Whether Listing 1.03 Applies

Plaintiff argues the ALJ erred at step three in the sequential analysis by failing to discuss 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.03 ("Listing 1.03"), despite evidence in the record establishing the listing was met in this case, including the opinion of Jeffrey Uzzle, M.D. ("Dr. Uzzle") and the fact that Plaintiff is obese [Doc. 17 pp. 8–10]. Plaintiff argues the ALJ's failure to discuss Listing 1.03 was not harmless in light of this additional evidence and that remand is therefore warranted [*Id.* at 10–14]. In response, the Commissioner argues that the evidence Plaintiff is relying on does not meet the requirements of Listing 1.03, nor does it raise a "substantial question" as to whether the listing was met, such that remand is not required [Doc. 20 pp. 11–14]. For the reasons discussed below, the Court finds that remand is not warranted as Plaintiff has failed to raise a "substantial question" as to whether the listing applies.

### 1. Applicable Law

"At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets *or equals* one of the listings in the Listing of Impairments." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)). "The Listing of Impairments . . . describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (quoting 20 C.F.R. §

7

404.1525(a)).  "Each listing specifies 'the objective medical and other findings needed to satisfy the criteria of that listing'" and "[a] claimant must satisfy all of the criteria to 'meet' the listing." *Id.* (quoting 404.1524(c)(3)).  "However, a claimant is also disabled if her impairment is the medical equivalent of a listing" in that it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.* (citations omitted).  Ultimately, it is a claimant's burden to demonstrate that his impairments meet or medically equal a relevant listing.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).[2]

"When considering whether a claimant's impairment 'meets or equals' a listed impairment . . . an ALJ is required to 'actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review.'" *Pasiak v. Comm'r of Soc. Sec.*, 800 F. App'x 301, 304 (6th Cir. 2019) (quoting *Reynolds*,  424 F. App'x at 416).  Accordingly, when an ALJ finds a specific listing does not apply but fails "to articulate any specific reasoning for her determination," the ALJ's "step-three findings normally [] constitute reversible error." *Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at *4 (6th Cir. July 12, 2021) (finding the ALJ erred by concluding Listing 5.00 did not apply but failing to articulate any specific reasoning for their determination); *Reynolds*, 424 F. App'x at 415 (finding the ALJ erred by concluding a Listing under section 1.00 did not apply but providing "[n]o analysis whatsoever" as to why the listing did not apply).

---

[2]      "[T]he listings in several ways are more restrictive than the statutory standard" for determining disability in the remainder of the five-step framework, as "the listings [] do not cover all illnesses and abnormalities that actually can be disabling" and the listings "exclude claimants who have listed impairments in a form severe enough to preclude substantial gainful activity, but not quite severe enough to . . . preclude any gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 533 (1990).

8

However, an ALJ's failure to articulate specific reasoning for finding a listing does not apply is not reversible error if "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three" or the claimant "has not shown [on appeal] that his impairments met or medically equaled in severity any listed impairment." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014); *Vickers*, 2021 WL 4468414, at *4 ("But the error was harmless because, to the extent that Vickers claims that he actually met or medically equaled any particular listing . . . he has not . . . explained how these impairments met or equaled it.") (citing *Forrest*, 591 F. App'x at 366); *cf. Reynolds*, 424 F. App'x at 416 (finding "[t]he ALJ's error was not harmless" in that case).

The Sixth Circuit has "also held that the ALJ need not discuss listings that the applicant clearly does not meet." *Pasiak*, 800 F. App'x at 304 (internal quotation omitted). Since "[t]here are a hundred or so listings . . . . the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record raises a substantial question as to whether the claimant could qualify as disabled under a listing, the ALJ should discuss that listing[,]" *id.* (internal quotations omitted), and their failure to do so constitutes reversible error. *See Pasiak*, 800 F. App'x at 305.

In order to raise a "substantial question" as to whether they have satisfied a listing, "[a] claimant must do more than point to evidence on which the ALJ could have based his findings." *Id.* (quoting *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014)); *see also Sheeks*, 544 F. App'x at 642 ("A substantial question about whether a claimant meets a listing requires more than . . . a mere toehold in the record on an essential element of the listing."). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet

9

or equal every requirement of the listing." *Pasiak*, 800 F. App'x at 305 (internal quotations omitted). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* (internal quotations omitted).

### 2. The ALJ's Failure to Discuss Listing 1.03

Listing 1.03 states, "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. pt. 404, subpart P, app. 1, § 1.03.[3] The ALJ made no mention of Listing 1.03 in his decision. Rather, at step three in his analysis, the ALJ first stated that "the effects of obesity on the other impairment(s) have been taken into account in reaching the conclusions herein at the second through fifth steps of the sequential disability evaluation process" [Tr. 18 (citing Social Security Ruling 19-2p)]. The ALJ then provided a thorough rationale as to why "[t]he severity of [Plaintiff's] mental impairment does not meet or medically equal the criteria of listing 12.04" [*Id.* at 18–20].

That the ALJ omitted any reference to Listing 1.03 distinguishes this case from *Reynolds* and *Vickers*, as the ALJs in those cases expressly considered the applicable listings but erred in failing to sufficiently articulate why they did not apply. *See Reynolds*, 424 F. App'x at 415 ("No analysis whatsoever was done as to whether [the plaintiff's] physical impairments . . . met or equaled a Listing under section 1.00, despite . . . concluding that they did not."); *Vickers*, 2021 WL 4468414, at *4 (finding the ALJ erred by failing "to articulate any specific reasoning for her

---

[3] Since the ALJ's decision, Listing 1.03 has been altered and moved to 20 C.F.R. Part 404, Subpart P, Appendix 1, section 1.17.

determination that [the plaintiff's] conditions failed to meet [Listing 5.00 or 6.00]").  Instead, the

facts of this case are similar to *Sheeks* and *Pasiak* to the extent the ALJs in those cases omitted any

reference to the contested listing.  In line with *Sheeks* and *Pasiak*, the pertinent question before the

Court is whether Plaintiff has raised a "substantial question" as to whether Listing 1.03 applies

such that remand for further proceedings is warranted.  *See Smith-Johnson*, 579 F. App'x at 433

(6th Cir. 2014) ("Here, the ALJ's decision does not discuss Listing 12.05.  The Court therefore

must determine whether the record evidence raises a substantial question as to [the plaintiff's]

ability to satisfy each requirement of the listing.").

### 3. Whether there is a Substantial Question as to whether Listing 1.03 Applies

Both parties focus on that portion of Listing 1.03 regarding a claimant's "inability to

ambulate effectively" [Doc. 17 p. 9 ("Here, surgical arthrodesis of a major weight-bearing joint is

well established." (citing Tr. 63–68, 80, 82, 413–14, 437)); Doc. 20 p. 8 (citing the language of

Listing 1.03 but focusing solely on the "inability to ambulate effectively" requirement)].  At the

time of the ALJ decision, section 1.00(B)(2)(b) defined "inability to ambulate effectively" as

follows,

> (1) Definition.  Inability to ambulate effectively means an extreme limitation of the
> ability to walk; i.e., an impairment(s) that interferes very seriously with the
> individual's ability to independently initiate, sustain, or complete activities.
> Ineffective ambulation is defined generally as having insufficient lower extremity
> functioning (see 1.00J) to permit independent ambulation without the use of a hand-
> held assistive device(s) that limits the functioning of both upper extremities.
> (Listing 1.05C is an exception to this general definition because the individual has
> the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable
> walking pace over a sufficient distance to be able to carry out activities of daily
> living.  They must have the ability to travel without companion assistance to and
> from a place of employment or school.  Therefore, examples of ineffective
> ambulation include, but are not limited to, the inability to walk without the use of

11

a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpart P, app. 1, § 1.00(B)(2)(b) (2020).

On appeal, Plaintiff argues that Dr. Uzzle's examination report evinces an inability to ambulate effectively to the extent he opined that Plaintiff would be unable to walk a block at a reasonable pace on rough or uneven surfaces [Doc. 17 p. 9 (citing Tr. 424)]. Plaintiff further argues that his obesity must be considered in combination with his musculoskeletal impairments in determining whether he met or equaled Listing 1.03 [*Id.* at 10 (citing 20 C.F.R. pt. 404, subpart P, app. 1, § 1.00(Q))].

In response, the Commissioner points out several issues with Dr. Uzzle's statement that Plaintiff was unable to walk a block at a reasonable pace on rough or uneven surfaces, including that the ALJ found this portion of Dr. Uzzle's report unpersuasive and Plaintiff does not challenge the ALJ's finding on appeal [Doc. 20 pp. 9–10]; Dr. Uzzle's statement is unsupported and contradicted by his own examination findings [*Id.* at 10, 11]; and the other medical evidence in the record contradicts Dr. Uzzle's statement [*Id.* at 11–12]. As to Plaintiff's obesity, the Commissioner argues that the ALJ did, in fact, consider Plaintiff's obesity in combination with his other impairments and that Plaintiff has otherwise failed to cite to any specific evidence in the record showing how his obesity and other impairments, in combination, evince an inability to ambulate effectively [*Id.* at 12–13]. The Commissioner argues that Plaintiff has therefore failed to raise a substantial question as to whether Listing 1.03 applies [*Id.* at 10, 14].

12

Having reviewed the parties' arguments, relevant portions of the record, and applicable authority, the Court finds that Plaintiff has not raised a "substantial question" regarding his inability to ambulate effectively for purposes of Listing 1.03. Plaintiff's reliance on Dr. Uzzle's opined limitation regarding his ability to walk at a reasonable pace on rough or uneven surfaces is problematic for several reasons.

First, the ALJ found this portion of Dr. Uzzle's report unpersuasive [Tr. 22],[4] and Plaintiff does not challenge the ALJ's findings on appeal. *Cf. Strittmatter v. Kijakazi*, No. 5:22-CV-00692, 2023 WL 207907, at *9 (N.D. Ohio Jan. 17, 2023) (finding plaintiff had not raised a substantial question as to whether a listing applied, in part, because the plaintiff was relying on her own statements that the ALJ had previously found not entirely credible).

Second, the statement by Dr. Uzzle that Plaintiff is relying on took the form of a check mark and Dr. Uzzle otherwise provided no further explanation for his opinion, despite the form asking him to provide those medical findings that support his conclusions [Tr. 424]. *See Smith-Johnson*, 579 F. App'x at 434 ("Smith-Johnson's argument . . . that she met Listing 12.05(c) is based on two perfunctory check marks on the evaluation form. Although those check marks indicate that some relevant documentation may exist, they do not conclusively demonstrate that the requirements of Listing 12.05(C) are satisfied in their entirety.").

Third, Dr. Uzzle's statement does not align with the remainder of his findings. *See id.* (noting the statements contained in the perfunctory check marks on the evaluation form

---

[4]    The ALJ "[found] persuasive Dr. Uzzle's assessments regarding the claimant's use of cane, the weight that the claimant can lift, and the postural and environmental limitations, but [was] unpersuaded by the remainder" because "[t]he opinion contains no explanation," is [] incomplete and internally inconsistent," and "was based on only one session of client contact, in a structured environment" [Tr. 22].

13

contradicted the remainder of the opining physician's conclusions).  Specifically, Dr. Uzzle found that Plaintiff was "observed to ambulate both with and without his straight tip cane," could "heel walk," "[has] fair ability to deep knee bend," his "tandem walking balance is good," he had "[n]ormal examination of the . . . right lower extremity," and he had "limited left ankle range of motion [but] otherwise full range of motion of the spine and extremities" [Tr. 414].

In addition, Dr. Uzzle's statement is contradicted by the other record evidence, including Plaintiff's testimony that he was solely responsible for caring for a young child with autism and mild cerebral palsy while his wife worked twelve-hour shifts [*Id.* at 40–41], Plaintiff's treatment notes that indicated Plaintiff maintained 5/5 strength of the left ankle and normal active range of motion [*Id.* at 364–367], and Plaintiff's same treatment notes that indicated he "[was] not interested in proceeding with [pain] injection[s] at [that] point in time" [*Id.* at 367].  *See Smith-Johnson*, 579 F. App'x at 434–35 (noting the statements contained in the perfunctory check marks on the evaluation form were contradicted by other medical evidence in the record); *Sheeks*, 544 F. App'x at 642 (looking to other evidence in the record that otherwise contradicted the plaintiff's proffered evidence).

Finally, even setting aside all of the other issues with Dr. Uzzle's statement, Plaintiff has failed to cite any other evidence from the record that indicates Plaintiff's musculoskeletal impairments impacted his ability ambulate effectively.  As such, Dr. Uzzle's statement is, at most, "a mere toehold in the record on an essential element of the listing."  *Sheeks*, 544 F. App'x at 642 (finding the plaintiff "[made] only a tenuous case for meeting [the listing]" when he pointed "only to his special education classes and his failure to finish high school" but failed to "flag any record evidence suggesting he had trouble caring for himself or handling social situations").

14

While Plaintiff does not cite to any additional evidence showing the impact his musculoskeletal impairments have on his ability to ambulate effectively, he does cite to the fact that he is obese and argues the ALJ should have "consider[ed] the combined effects of [his] obesity with musculoskeletal impairments in determining the applicability of the Listing[]" [Doc. 17 p. 10 (citing 20 C.F.R. pt. 404, subpart P, app. 1, § 1.00(Q))]. However, the ALJ did consider the impact of Plaintiff's obesity at both step three and step four of the five-step sequential process. At step three, the ALJ stated "the effects of obesity on the other impairment(s) have been taken into account in reaching the conclusions herein at the second through fifth steps of the sequential disability evaluation process" [Tr. 18]. Then again at step four, the ALJ stated, "[Plaintiff] is morbidly obese. This condition also contributes to the pain and/or discomfort associated with his left foot. He has been advised to lose weight and has been prescribed medication to assist with this process. He . . . attained some reduction in weight, but has no plans to undergo bariatric surgery" [*Id.* at 22].

Moreover, Plaintiff has failed to point to any specific evidence in the record that would indicate his obesity, when considered in conjunction with his musculoskeletal impairments, makes him unable to ambulate effectively. *See Smith-Johnson*, 579 F. App'x at 432 ("[T]he claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing."). Rather, as just noted, the remaining evidence in the record indicates Plaintiff was able to ambulate effectively despite his obesity and musculoskeletal impairments— including Plaintiff's testimony that he cares for his child, his treatment notes indicating full strength in his left ankle in 2018, and the fact that he declined his treating physician's offer for pain injections at that time. *See Cheuvront v. Comm'r of Soc. Sec.*, No. 5:19-cv-00360, 2019 WL 7049106 (N.D. Ohio Dec. 23, 2019) (finding the ALJ's error in failing to properly evaluate whether

15

the plaintiff met or medically equaled a listing based on his cerebral palsy, multiple sclerosis, and obesity did not warrant remand because the plaintiff could not reasonably provide such impairments, "singly or in combination" met a listing based on record evidence that he had normal gait as well as the plaintiff's own testimony that he could continue doing household chores).

The ALJ having considered both Dr. Uzzle's statement that Plaintiff would be unable to walk a block at a reasonable pace on rough or uneven surfaces as well as Plaintiff's obesity, the Court finds that Plaintiff has failed to raise a substantial question as to whether Plaintiff is unable to ambulate effectively as defined for purposes of Listing 1.03.[5]   Accordingly, the Court denies Plaintiff's first basis for remand.

### B.      The ALJ's Evaluation of D.N.P. Barnes's Opinion

Plaintiff next argues that remand is warranted because the ALJ "failed to comply with the regulations when he found the opinion of Roger Barnes, D.N.P., unpersuasive without adequately discussing the factors of supportability and consistency" [Doc. 17 p. 12].   In response, the Commissioner argues "[t]he ALJ briefly but clearly articulated the required findings regarding Mr. Barnes, and the [ALJ's] assessment is supported by substantial evidence" [Doc. 20 p. 14].   For the reasons discussed below, the Court finds that the ALJ applied the correct legal standards in evaluating D.N.P. Barnes's opinion and such evaluation is otherwise supported by substantial evidence.

---

[5]      While not argued by Plaintiff, the Court has considered that to the extent the *Reynolds*, *Vickers*, and *Forrest* line of cases is distinct from the *Pasiak* and *Sheeks* "substantial question" cases and should apply in this case, the Court finds that remand is still not warranted as any error by the ALJ was harmless for the reasons just discussed.  *See Smith-Johnson*, 579 F. App'x at 432–33, 433 n.5 (comparing the harmless-error standard in *Reynolds* to the substantial-question standard in *Sheeks*).

### 1. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant medical and other evidence, including medical opinion evidence. 20 C.F.R. § 404.1520(e). As of March 27, 2017,[6] an ALJ must "evaluate the persuasiveness of medical opinions and prior administrative medical findings" using five factors,[7] the most important of which are supportability and consistency. *Id.* § 404.1520c(a), (b)(2). The ALJs are required to "articulate how [they] considered the medical opinions and prior administrative medical findings" and specifically "explain how [they] considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* § 404.1520c(a), (b)(2).

While "the Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the [articulation] requirement," *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022) (Linsay, M.J.), "[d]istrict courts applying the [] regulations both within this circuit and throughout the country consistently apply the articulation requirement literally," *id.*, by requiring the ALJ to "provide a

---

[6]     For claims filed prior to March 27, 2017, the weight afforded a medical opinion generally depended on whether the opinion was from "non-examining sources; examining but non-treating sources; [or] treating sources." *See Underwood v. Soc. Sec. Admin.*, No. 3:16-cv-00546, 2017 WL 128518, at *5 (M.D. Tenn. Jan. 11, 2017) (citing 20 C.F.R. § 404.1527). Under the prior regulations, "a treating physician's opinion [was] due 'controlling weight' if that opinion is 'well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Id.* This was known as the "treating physician" rule. *Id.*

[7]     The five factors include the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c).

17

coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), "clearly explain [their] consideration of the opinion and identify the evidence supporting [their] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), and otherwise "explain how [they] considered the supportability and consistency factors as to each medical opinion." *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021). In other words, the ALJ must "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

If the ALJ applied the correct legal standards in evaluating a medical opinion by properly articulating the consistency and supportability factors, the Court's review of the ALJ's evaluation of a medical opinion is otherwise limited to whether substantial evidence supports the ALJ's conclusions. *See Mercado v. Kijakazi*, No. 1:21-CV-365, 2022 WL 4357484, at *18 (M.D. Penn. Sept. 20, 2022) ("The ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding.").

### 2. Whether the ALJ's Evaluation of D.N.P. Barnes's Opinion Applied the Correct Legal Standards and is Supported by Substantial Evidence.

On April 28, 2020, D.N.P. Barnes completed a three-page medical source statement for Plaintiff [Tr. 437–39]. In his decision, the ALJ summarized D.N.P. Barnes's findings as follows:

> In an April 2020 medical source statement regarding the claimant's physical condition, Rog[er] Barnes, DNP, concluded the claimant could not maintain full time work without missing more than 2 days per month. He could sit for 8 hours in an 8-hour workday. He could occasionally lift and/or carry 5 pounds. He could

18

occasionally bend, but never push or pull. He must elevate his legs 2-3 times a day for 20 minutes and take unscheduled breaks. He has limitations in working at heights.

[*Id.* at 22]. In evaluating D.N.P. Barnes's opinion, the ALJ stated,

> This opinion[] is [] not entirely persuasive. Notably, the finding that the claimant is able to work or engage in regular work is an issue reserved to the Commissioner and therefore no special significance is given to this opinion. (20 CFR § 404.1527(d)) Dr. Barnes does not explain why the claimant is limited to lifting and/or carrying only 5 pounds, when the evidence shows the claimant exhibited normal muscle normal grip strength and strength testing of 5/5 in the four extremities a few months earlier. (7F/3) The undersigned therefore finds persuasive the assessment regarding working at heights, but is unpersuaded by the remainder.

[*Id.*].

On appeal, Plaintiff argues that "the ALJ did not address the factor of supportability at all" [Doc. 17 p. 15]. He further argues that "[t]he ALJ only superficially addressed consistency when he compared D.N.P. Barnes's opinion to the report of Dr. Uzzle" by stating "Dr. Barnes does not explain why the claimant is limited to lifting and/or carrying only 5 pounds, when the evidence shows the claimant exhibited normal muscle normal grip strength and strength testing of 5/5 in the four exterminates a few months earlier (7F/3)" [*Id.* at 14 (quoting Tr. 23)]. Finally, Plaintiff argues that "[t]he problem with this analysis . . . is that Dr. Uzzle's documentation of 5/5 strength testing and normal grip strength are inapposite to the issue of whether lifting and carrying exacerbate Plaintiff's documented foot and ankle pain" [*Id.* at 14–15].

In response, the Commissioner argues that the ALJ properly articulated the supportability factor with his statement that D.N.P. Barnes "does not explain why the claimant is limited to lifting and/or carrying only 5 pounds" [Doc. 20 p. 14 (citing Tr. 22)]. The Commissioner argues the ALJ also articulated the consistency factor by noting D.N.P. Barnes's opined lifting limitation was inconsistent with Dr. Uzzle's clinical findings [*Id.* at 14–15 (citing Tr. 415–16, 437, 439)]. Finally,

as to Plaintiff's argument that those portions of Dr. Uzzle's report that the ALJ relied on are inapposite to whether lifting and carrying exacerbated Plaintiff's foot and ankle pain, the Commissioner contends "this argument is speculative, . . . does not cite any medical opinion that directly supports it" and otherwise "constitutes an alternative interpretation of the same evidence reviewed by the ALJ" [*Id.* at 15].

For the reasons discussed below, the Court finds that the ALJ adequately articulated the consistency and supportability factors and his evaluation of D.N.P. Barnes's opinion is otherwise supported by substantial evidence.

      **a.**      **Whether the ALJ Sufficiently Articulated the Supportability and Consistency Factors in Evaluating D.N.P. Barnes's Opinion**

The Court first considers whether the ALJ applied the correct legal standards when evaluating D.N.P. Barnes's opinion. As it relates to the supportability factor, section 404.1520c(c)(1) states, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). "In other words, the supportability analysis focuses on the physicians' explanations of [their] opinions" and "whether [the physician] provided support or an evidentiary basis for [their] medical opinions." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119-TMP, 2021 WL 3056108, at *10 (W.D. Tenn. July 20, 2021) (internal quotations omitted).

The Court finds the ALJ adequately articulated the supportability factor in this case when he stated "Dr. Barnes does not explain why the claimant is limited to lifting and/or carrying only 5 pounds" [Tr. 23]. While the ALJ did not explicitly use the word "supportability" and his explanation was otherwise short, these facts are not dispositive. *See Cormany v. Kijakazi*, No.

5:21CV933, 2022 WL 4115232, at *5 (N.D. Ohio Sept. 9, 2022) (stating the ALJ's "omission [of the word supportability] does not necessarily mean that the ALJ did not consider [this] factor"); *Terhune v. Kijakazi*, No. 3:21-37-KKC, 2022 WL 2910002, at *4 (E.D. Ky. July 22, 2022) ("The ALJ's explanation does not need to be lengthy."). In a case such as this, in which the medical provider sets forth little to no explanation for the ALJ to, in turn, critique,[8] the Court finds it sufficient that the ALJ stated the physician failed to provide any accompanying explanation. *See Rodriguez v. Comm'r of Soc. Sec.*, No. 21-cv-00752, 2022 WL 3973658, at *3 (N.D. Ohio Sept. 1, 2022) (finding the ALJ sufficiently articulated the supportability factor when they stated a physician's opinion unpersuasive because the physician "failed to 'provide an explanation with documented support'"). The Court therefore finds the ALJ sufficiently articulated the supportability factor as to D.N.P. Barnes's opinion.

As it relates to the consistency factor, section 404.1520c(c)(2) states, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). Whether an ALJ has sufficiently articulated the consistency factor often turns on whether they cited specific evidence from other portions of the record that were, or were not, consistent with the medical opinion in question. *Compare Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 965027, at *4 (E.D. Mich. Mar. 30, 2022) (finding ALJ sufficiently articulated the consistency factor with her "citation to the specific documents in the record" that allowed "the Magistrate Judge to assess the reasoning behind the ALJ's assertion"), *with King v. Kijakazi*, No. 1:20-CV-

---

[8]     The only explanation provided by D.N.P. Barnes regarding his opined lifting and carrying limitations was the word "X-Rays" [Tr. 437]. The remainder of D.N.P. Barnes's opinion is devoid of any reference to what x-rays he is referring to and whether he took the x-rays or whether he was reviewing Plaintiff's previous x-ray records.

21

196-TAV-HBG, 2021 WL 3520695, at *7 (E.D. Tenn. July 21, 2021) (finding the ALJ failed to sufficiently articulate the consistency factor because he "failed to specifically cite to any examination findings or other evidence in the medical record that rendered Dr. Goewey's earlier opinion more consistent with the medical record than his subsequent examination" such that the court could not engage in meaningful review of the ALJ's decision), *report and recommendation adopted sub nom.*, 2021 WL 3516659 (E.D. Tenn. Aug. 10, 2021).

In this case, the ALJ stated, "Dr. Barnes does not explain why the claimant is limited to lifting and/or carrying only 5 pounds, when the evidence shows the claimant exhibited normal muscle normal grip strength and strength testing of 5/5 in the four extremities a few months earlier" [Tr. 23 (citing Tr. 415)]. In making this statement, the ALJ identified the specific portion of D.N.P. Barnes's opinion he found problematic, he identified the specific portion of a separate medical opinion that contradicted that opinion, and he noted the short timeframe between the otherwise contradictory findings. The Court finds that, in doing so, the ALJ sufficiently articulated the consistency factor in finding D.N.P. Barnes's opinion was not entirely persuasive.

In reviewing the ALJ's evaluation of D.N.P. Barnes's opinion, the Court finds that the ALJ applied the correct legal standards by sufficiently articulating how D.N.P. Barnes failed to support his opinion and how his opinion was inconsistent with other evidence in the record. In doing so, the Court finds the ALJ "buil[t] an accurate and logical bridge between the evidence and [the ALJ's] conclusion" *Todd*, 2021 WL 2535580, at *6, such that the Court understands why the ALJ found D.N.P. Barnes's opinion was not entirely persuasive.

### b. Whether the ALJ's Evaluation of D.N.P. Barnes's Opinion is Supported by Substantial Evidence

Plaintiff's remaining argument is that "Dr. Uzzle's documentation of 5/5 strength testing and normal grip strength are inapposite to the issue of whether lifting and carrying exacerbate Plaintiff's documented foot and ankle pain" [Doc. 17 p. 14]. Plaintiff adds that "Dr. Uzzle recognized this when he restricted continuous lifting to 10 pounds or less and restricted lifting and carrying of 11 to 20 pounds to no more often than two thirds of a normal workday" [*Id.* at 15 (citing Tr. 417)]. Plaintiff then states that "[t]he fact that Plaintiff's grip strength is normal or that his arm and leg strength is intact, in no way undermines the lifting restrictions necessary to prevent exacerbation of Plaintiff's foot and ankle pain" [*Id.* (citing Tr. 417–18)].

The Court understands Plaintiff to be arguing that the evidence on which the ALJ relied, namely, Dr. Uzzle's findings that Plaintiff had 5/5 strength testing and normal grip, was insufficient to support his conclusion that D.N.P. Barnes's opinion was unpersuasive, particularly in light of Dr. Uzzle's own lifting/carrying restrictions and the fact that lifting exacerbates his foot and ankle pain. To the extent Plaintiff is challenging the sufficiency of the evidence the ALJ relied on in evaluating the persuasiveness of D.N.P. Barnes's opinion, as opposed to challenging whether the ALJ applied the correct legal standards by articulating the consistency and supportability factors, the Court finds Plaintiff's argument must be evaluated under the substantial-evidence standard. *See Blakley*, 581 F.3d at 405 ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains

sufficien[t] evidence to support the agency's factual determinations." (internal quotations omitted)).

In turn, the Court finds the ALJ's evaluation of D.N.P. Barnes's opinion is supported by substantial evidence. Specifically, the ALJ's reliance on Dr. Uzzle's 5/5 strength testing and normal grip findings were sufficient evidence for the ALJ to conclude D.N.P. Barnes's lifting/carrying limitations were not consistent with the record. *See Shelton v. Saul*, No. 2:1-cv-00093, 2020 WL 1284628, at *2–3 (M.D. Tenn. Mar. 18, 2020) (finding substantial evidence supported the ALJ's decision to discount a physician's opined lifting and carrying limitations when the ALJ had cited evidence in the record indicating that the plaintiff had normal grip strength and normal strength in her upper and lower extremities). The ALJ's finding that D.N.P. Barnes's lifting/carrying limitations were not consistent with the record was, in turn, sufficient for the ALJ to conclude D.N.P. Barnes's opinion was mostly unpersuasive. *See, e.g.*, *Ridge v. Kijakazi*, No. 1:20-CV-289-JRG-HBG, 2022 WL 1284235, at *8 (E.D. Tenn. Jan. 11, 2022) (finding the ALJ's conclusion that the medical source's opinion was unpersuasive because it was inconsistent with the other evidence in the record was substantial evidence supporting the ALJ's conclusion).

Plaintiff's arguments to the contrary are unpersuasive for several reasons. For one, Plaintiff relies on the fact that Dr. Uzzle "recognized" that his 5/5 strength testing and normal grip strength are inapposite to the issue of whether lifting and carrying exacerbate Plaintiff's foot and ankle pain as evidenced by Dr. Uzzle's lifting and carrying restrictions [Doc. 17 pp. 14–15]. However, Dr. Uzzle provides no explanation for his lifting and carrying restrictions—which took the form of check-boxes—despite the medical form instructing him to provide the medical and clinical findings that supported his assessment [Tr. 417]. Thus, it is unclear whether Dr. Uzzle "recognized" the impact of lifting and carrying on Plaintiff's foot and ankle pain. In fact, it would

24

appear Dr. Uzzle did not recognize any such impact to the extent he placed less-restrictive limitations on Plaintiff than D.N.P. Barnes.[9]

Plaintiff's argument is also problematic to the extent he fails to cite any medical evidence in the record that would indicate lifting and carrying exacerbates Plaintiff's foot and ankle pain. Rather, the only citation to the record is Dr. Uzzle's report which, as just discussed, does not directly address the issue. *See Shelton*, 2020 WL 1284628, at * (rejecting the plaintiff's assertion "that her lifting and carrying limitations stem from her cervical pain" because such assertion "is not supported by the record evidence" (internal quotations omitted)). Finally, even if Dr. Uzzle recognized that lifting and carrying exacerbated Plaintiff' foot and ankle pain or other evidence in the record stated as much, at most, such evidence would be substantial evidence that could have supported an opposite conclusion to that reached by the ALJ. However, this Court must uphold the ALJ's decision if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an oppositive conclusion." *Blakeley*, 581 F.3d at 406. For these reasons, the Court finds that the ALJ's evaluation of D.N.P. Barnes's opinion is supported by substantial evidence.

Since the ALJ applied the correct legal standards in evaluating D.N.P. Barnes's opinion and his conclusions are otherwise supported by substantial evidence, the Court denies Plaintiff's second basis for remand.

_____

[9]     D.N.P. Barnes opined that Plaintiff could occasionally lift only up to five pounds and never left more than that [Tr. 437]. Dr. Uzzle opined that Plaintiff could continuously lift up to ten pounds, frequently lift up to twenty pounds, occasionally lift up to fifty pounds, frequently carry up to ten pounds, and occasionally lift up to twenty pounds [*Id.* at 417].

25

### C. The ALJ's RFC Determination

Plaintiff argues remand is also warranted because the ALJ's RFC determination fails to properly account for his mental impairments, especially in light of the ALJ's finding at step three that Plaintiff has moderate restrictions in maintaining concentration, persistence, and pace. [Doc. 17 pp. 17– 19]. In response, the Commissioner contends that remand is not required because the ALJ's RFC determination appropriately accounts for Plaintiff's mental impairments and is otherwise supported by substantial evidence [Doc. 20 pp. 16–20]. For the reasons discussed below, the Court finds that the ALJ properly incorporated Plaintiff's mental impairments into the RFC determination such that remand is not required.

### 1. Applicable Law

In determining whether a claimant's mental impairments meet or medially equal a listed impairment at step three in the sequential process, an ALJ must consider the "paragraph B" criteria for the relevant listing or listings. The paragraph B criteria, which are the same for all mental disorder listings excepts Listing 12.05, "provide[] the functional criteria [the Commissioner] asses[es] to evaluate [the claimant's] mental disorder limits [their] functioning" and include the claimant's ability to "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* A limitation is "moderate" if the claimant's functioning in an area "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* at § 12.00(F)(2)(c).

If an ALJ determines a claimant does not satisfy the listing requirements for one or more mental impairments at step three—such that they are required to proceed to step four and make an

RFC determination—the ALJ is "not required to include a paragraph B finding as part of [their] RFC determination" or otherwise "mirror" their step-three findings. *Bookmyer v. Comm'r of Soc. Sec.*, No. 1:22-cv-1004, 2023 WL 2643496, at *6 (W.D. Mich. Mar. 27, 2023). That is because "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings." SSR 96-8p, 1996 WL 374184, at *4. Instead, the pertinent question is whether the ALJ's RFC determination and accompanying hypothetical questions posed to the vocational expert "accurately portray[] [a claimant's] individual physical and mental impairments." *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (quoting *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010)); *Bookmyer*, 2023 WL 2643496, at *6 ("The pertinent question, then, is whether the ALJ's RFC assessment properly account for Plaintiff's mental limitations.").

### 2. Whether Plaintiff's RFC Accurately Portrays His Mental Impairments

At step three of his analysis, the ALJ found Plaintiff had moderate limitations in his ability to concentrate, persist, or maintain pace [Tr. 19]. The ALJ reasoned:

> In February and July 2019, the claimant reported difficulty completing tasks. As stated, however, he also reported preparing meals, reading, playing games, managing money, using the computer, and caring for his son and pets. (1E; 4E)[.] He occasionally shops for household items and takes his son to medical appointments. (5E)[.] In December 2019, the claimant reported problems with concentration, in addition to completing tasks. (11E) Examination notes do not indicate an inability to complete testing that assesses concentration and attention. (6F)[.] Further, the claimant demonstrated little difficulty concentrating at the hearing. When questioned, he was generally able to process the questions without difficulty and responded appropriately, without delay. He paid attention and was able to participate throughout the hearing. (Hrg. Testimony)

[*Id.*]. Before concluding his step-three analysis, the ALJ further stated,

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[*Id.* at 20].

Finally, as to Plaintiff's RFC, the ALJ found in pertinent part, "[Plaintiff] can perform simple tasks with customary breaks and few changes in a routine work setting. He can have occasional interaction with the general public and frequent interaction with co-workers and supervisors" [*Id.*].

On appeal, Plaintiff argues that the ALJ erred because, despite finding he had moderate limitations in his ability to concentrate, persist, or maintain pace, "the ALJ failed to include any correlating restriction in the RFC" [Doc. 17 p. 18]. Plaintiff acknowledges the just-quoted RFC findings but argues that "nothing in the ALJ's RFC accounts for the moderate limitations in Plaintiff's ability to concentrate, persist, or maintain pace" [*Id.*]. Plaintiff relies on *Ealy v. Commissioner of Social Security*, to assert that "[w]hen the controlling hypothetical inadequately describes Plaintiff's limitations, the vocational expert's conclusion does not serve as substantial evidence that other work could be performed" [*Id.*]. Plaintiff also relies on *Benton v. Commissioner of Social Security*, 511 F. Supp. 2d 842 (E.D. Mich. 2007), and asserts that "when the ALJ specifically finds moderate restrictions, his RFC is deficient when the limitations are not reflected therein" [*Id.* at 18–19]. Finally, Plaintiff argues that the ALJ's error was not harmless, "because the jobs cited by the [vocational expert] do not appear to accommodate moderate restrictions in concentration, persistence, and pace," including the opined clerical sorter job [*Id.* at 19].

28

Having reviewed Plaintiff's arguments, the relevant cited authority, and the applicable portions of the record, the Court finds that the ALJ's RFC determination "accurately portrays" Plaintiff mental impairments and that this determination is otherwise supported by substantial evidence. While Plaintiff relies on *Ealy*, he also concedes that the facts of that case "are not present here" [*Id.* at 18]. The Sixth Circuit addressed the specific circumstances of *Ealy* in *Smith-Johnson v. Commissioner of Social Security*, 579 F. App'x 426, 436–37 (6th Cir. 2014). In *Smith-Johnson*, the ALJ found at step three that the plaintiff had moderate limitations in concentration, persistence, and maintaining pace. 579 F. App'x at 429. In formulating the plaintiff's RFC, the ALJ ultimately found the plaintiff "[could] perform simple, routine, repetitive tasks, but must avoid contact with the general public." *Id.* at 436. The plaintiff challenged the ALJ's RFC determination on appeal, arguing it did not "adequately convey[]" her limitations in concentration, persistence, and maintaining pace and otherwise contradicted the court's holding in *Ealy*. *See id.* at 436–37.

In addressing the plaintiff's claim, the Sixth Circuit distinguished *Ealy* because "the claimant's doctor [in that case] limited him to 'simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical'" whereas the ALJ "included only a limitation 'to simple repetitive tasks and instructions in nonpublic work settings'" in the plaintiff's RFC and questions to the vocational expert. *Id.* at 437 (quoting *Ealy*, 594 F.3d at 516). The Sixth Circuit noted that "the RFC assessment and the hypothetical [in *Ealy*] did not adequately reflect the claimant's limitations because it truncated the doctor's specific restrictions." *Id.* The *Smith-Johnson* court found that fact distinguished *Ealy*, as the physician in *Smith-Johnson* "did not place any concrete functional limitations on [the claimant's] abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks." *Id.*

29

The Sixth Circuit's rationale in *Smith-Johnson* is applicable to the present case. While Plaintiff relies on the ALJ's step-three concentration-persistence-pace findings and cites to *Ealy*, he fails to point to any evidence in the record in which a medical provider included specific, or concrete, functional limitations regarding his ability to maintain attention, concentration, or pace that the ALJ "truncated" or otherwise failed to include in his RFC determination. To that end, *Ealy* is distinguishable from the present case and otherwise inapposite.

The other case Plaintiff relies on, *Benton*, is more factually on-point but not controlling. In that case, "the ALJ found that although Plaintiff ha[d] a moderate deficiency in her ability to maintain concentration, persistence, and pace, she [was] able to perform simple, routine, repetitive work." *Benton*, 511 F.Supp.2d at 849. The court in that case found the ALJ's RFC findings "insufficient to suitably accommodate Plaintiff's concentration limitations" and otherwise "not adequate on the issue of moderate limitations of concentration, persistence, and pace for [that] Court to determine the number of jobs identified by the [vocational expert]." *Id.* In reaching this conclusion, the court relied on the fact that "two Courts in this circuit [have] held that deficiencies of concentration, persistence, and pace must be included in the hypothetical question." *Id.* (first citing *Thomczek v. Chater*, No. 94-74011, 1996 WL 426247 (E.D. Mich. Jan. 5, 1996); and then *Herriman v. Apfel*, No. 99-CV-73489-DT, 2000 WL 246598 (E.D. Mich. Feb. 11, 2000)).

*Benton*, and "several [other] cases from the Eastern District of Michigan [appear to stand] for the proposition that a limitation to 'simple routine tasks' may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or maintaining pace." *Bookmyer*, 2023 WL 2643496, at *6 (citing *Hicks v. Comm'r of Soc. Sec.*, No. 10-cv-13643, 2011 WL 6000714 (E.D. Mich. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 6000701 (E.D. Mich. Nov. 28, 2011)); *see also Hicks*, 2011 WL 6000714, at *7 (citing *Benton* and

30

*Thomczek*). However, "numerous cases from the Sixth Circuit, as well as from [the Western District of Michigan], have held that [similar] limitations . . . adequately addressed the claimant's moderate limitations in concentration, persistence, or maintaining pace." *Id.* (collecting cases including *Smith-Johnson* and *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536 (6th Cir. Jan. 31, 2020)).

One of these cases from the Sixth Circuit, *Wood v. Commissioner*, includes very similar facts and arguments to the present case. In that case, the plaintiff argued "the ALJ's decision was based on inconsistent findings" because the ALJ found that the plaintiff had moderate limitations in concentration, persistence, or pace" but, in formulating the claimant's RFC, the "only limitation in this area was to performing simple and routine tasks." *Wood*, 2020 WL 618536, at *2. In rejecting the plaintiff's arguments, the Sixth Circuit stated "an ALJ does not necessarily err by finding moderate limitations at step three but excluding those limitations in a[n] [RFC] analysis at steps four and five." *Id.* at *3. The court of appeals then noted that the ALJ in that case had expressly stated both that her findings at step three were not an RFC finding and that she had considered the step three limitations in her analysis. *See id.* The court found "significant[]" the fact that the plaintiff "fail[ed] to allege any specific additional limitation—including those related to persistence and pace—that would have altered the ALJ's [RFC] determination." *Id.* Ultimately, the Sixth Circuit found that the plaintiff was "essentially challeng[ing] the ALJ's assessment of her capacity at step four of the analysis," which the court reviews under the deferential substantial-evidence standard. *Id.* (citing *Blakely*, 581 F.3d at 405–06). The court then cited several facts from the record that supported the ALJ's RFC determination. *See id.* Finally, the court of appeals stated that "[b]ecause the ALJ's determination is supported by substantial evidence, the ALJ could

31

rely on the vocational expert's testimony that [the plaintiff] could still perform certain limited light work as described in the ALJ's hypothetical at the hearing." *Id.*

The Court finds *Wood* to be more persuasive than the *Benton* line of cases from the Eastern District of Michigan to the extent it is a more-recent Sixth Circuit opinion that is factually similar to the case at hand and aligns with the court of appeal's opinion in *Smith-Johnson* as well as cases from other district courts. The Court, in turn, finds that the same rationales set forth by the Sixth Circuit in *Woods* are dispositive of the issue at hand and lead this Court to conclude the ALJ did not err in his RFC determination and remand is not otherwise required.

For one, like the ALJ in *Wood*, the ALJ in this case explicitly stated at the end of his step-three findings both that (1) the limitations he discussed related to the paragraph B limitations—which includes Plaintiff's ability to concentrate, persist, or maintain pace—"are not a residual functional capacity assessment" [Tr. 20]; and (2) his "[RFC] assessment reflects the degree of limitation [he] has found in the "paragraph B" mental function analysis" [*Id.*]. *See Wright v. Comm'r of Soc. Sec.*, No. 1:19-cv-779, 2021 WL 1085002, at *7 (W.D. Mich. Mar. 22, 2021) (citing *Wood* and finding identical language to that used by the ALJ in this case persuasive in rejecting the plaintiff's argument that the ALJ failed to properly incorporate their moderate concentration-persistence-pace limitations in their RFC). In addition, like the plaintiff in *Wood*, Plaintiff in this case has failed to allege "any specific additional limitation" that would have altered the ALJ's RFC determination. *Wood*, 2020 WL 618536. Nor has Plaintiff cited to any evidence in the record supporting an additional limitation. *See Bookmyer*, 2023 WL 2643496, at *7 ("Plaintiff points to no evidence in the record that he is more limited than the ALJ found.").

Because Plaintiff has failed to cite any specific limitation that he argues the ALJ failed to incorporate or any supporting evidence from the record, and the ALJ otherwise expressly stated

that he considered Plaintiff's moderate limitations in concentration, persistence, and pace, the Court finds that Plaintiff has failed to show how the ALJ did not properly account for, or portray, his mental impairments in his RFC determination. To the contrary, the Court finds that the ALJ's findings that "[Plaintiff] can perform simple tasks with customary breaks and few changes in a routine work setting" and "can have occasional interaction with the general public and frequent interaction with co-workers and supervisors" [Tr. 20] accurately portray his impairments and are supported by substantial evidence found in the record and cited by the ALJ in his opinion [Tr. 22–24], including the prior administrative findings that Plaintiff could maintain concentration on simple tasks with breaks [Tr. 68–70; *id.* at 88–89] and Plaintiff's own testimony that he cared for his child while his wife was at work [*Id.* at 40–41].

Because the ALJ's RFC determination is supported by substantial evidence, the ALJ was permitted to rely on the vocational expert's testimony in response to the hypothetical posed by the ALJ at the hearing that reflected that RFC determination [Tr. 20, 49–50 (asking the vocational expert a hypothetical question with the same restrictions ultimately adopted by the ALJ in his RFC)]. *See Wood*, 2020 WL 618536, at *4; *Reinartz*, 795 F. App'x at 449 ("[A]s long as a hypothetical question accurately portrays [a claimant's] individual physical and mental impairments, a vocational expert's response to that question constitutes substantial evidence.") (internal quotations omitted). For these reasons, the Court denies Plaintiff's final basis for remand.

## VI.   CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 16**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge